IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH
CAROLINA CHARLOTTE DIVISION

Civil Action No. 3:21-CV-618

AIMEE IRENE AQUINO,

 Plaintiff,

  v.            **DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE CITY OF CHARLOTTE,

 Defendant.

Pursuant to Rule 7.1(C) of the Local Rules Governing Civil Cases for the United States District Court for the Western District of North Carolina and Rule 56 of the Federal Rules of Civil Procedure, Defendant, City of Charlotte ("City" or "Defendant"), by and through undersigned counsel, respectfully submits this Brief in Support of Motion for Summary Judgment.

## BOTTOM LINE

Plaintiff, a police officer with the Charlotte Mecklenburg Police Department ("CMPD"), was cited for termination after the City received a *Giglio* disqualification letter which prevented her from performing the essential function of testifying in court. Plaintiff was treated like every other CMPD police officer both before, during and after she was cited for termination. The Civil Service Board agreed with the City that Officer Aquino violated Rule of Conduct 5A: Unsatisfactory Performance by not being able to testify in Court. However, they overturned the corrective action and chose to suspend Plaintiff without pay for 90 days. As a result, Plaintiff has been placed back in her prior position with CMPD. There is no factual dispute or legal basis to support any of Plaintiff's claims against the City.

## FACTS

1. Plaintiff was hired by the City of Charlotte to work as a CMPD patrol officer in 2009 and began her job in May 2010. (Doc. 36)

2. There are 22 "essential functions" that a CMPD officer must be able to perform to do his or her job. One of those functions is providing testimony in court. (COCSJ 1-2)

3. In August 2013, after an investigation by CMPD Internal Affairs, Plaintiff was found to have been untruthful about her location while on duty on four separate occasions. (COC6-14). She did not appeal this ruling. (COCSJ 138-139)

4. On March 14, 2016, a jury rendered a verdict against Plaintiff for slander. (COCSJ 15-16). In the trial, Plaintiff was represented by counsel, testified and had the opportunity to present evidence. (COCSJ 141-142). Given that the statement at issue was made while Plaintiff was at work, the City provided outside counsel for Plaintiff and paid $41,500 to settle the claim after the jury rendered a $50,000 verdict against Officer Aquino. (COCSJ17-20). Plaintiff was told she could appeal the verdict, but she would have to pay for it herself. (COCSJ 144)

5. On November 15, 2018, Plaintiff received a *Giglio* disqualification letter from Mecklenburg County District Attorney Spencer B. Merriweather III (the "Giglio Letter") stating that the District Attorney's office "w[ould] no longer be able to call Officer Aquino as a police witness for the State of North Carolina in any criminal or traffic case" given that she had two separate findings of untruthfulness- one from 2013 for falsely recording her location (which they had been disclosing since 2013) and the second being the 2016 slander verdict. (COCSJ 21-22). Based upon these two violations, Mr. Merriweather said it would be "virtually impossible" to rehabilitate Plaintiff's credibility. (*Id*.)

6. On November 26, 2018, Mr. Merriweather notified CMPD of the District Attorney's issuance of the Giglio Letter. (Doc. 36-3)

7. A copy of the Giglio Letter was placed in Plaintiff's personnel file as the City is required to do under N.C.G.S. §160A-168, and the North Carolina Department of Justice Criminal Justice Standards Division was notified about the letter as the City is required to do pursuant to NG.G.S. § 17C-16. (COCSJ 63). Plaintiff acknowledges the City's obligation to make this notification in her Complaint (Doc. 36, ¶96).

8. On April 10, 2019, a CMPD Independent Chain of Command Review Board considered the circumstances of the Giglio Letter and determined that Plaintiff had violated CMPD Rule of Conduct 5A: Unsatisfactory Performance. (COCSJ 24-28). Plaintiff was suspended without pay and cited for termination. (*Id.*). Officer Aquino testified that while she did not originally give a statement to Internal Affairs in connection with this investigation, she subsequently provided them with a written statement and also met with a Deputy Chief to appeal the ruling once it was rendered. (COCSJ146, 151). The decision remained the same. (*Id.*)

9. On July 28-29, 2021, the Civil Service Board ("CSB") conducted a hearing on Plaintiff's citation for termination. (COCSJ 56-62). Plaintiff was represented by counsel, testified and had the opportunity to present evidence. (COCSJ 146)

10. On September 10, 2021, the CSB rendered its decision. The CSB sustained the allegation that Plaintiff had violated CMPD Rule of Conduct 5A: Unsatisfactory Performance. However, they overturned the corrective action and chose to suspend Plaintiff without pay for 90 days. Plaintiff was not awarded back pay by the CSB. (COCSJ 56-62)

11. Once Plaintiff returned to work, she had 96 hours of state mandated training she needed to complete as well as the state required Basic Law Enforcement Training exam. (COCSJ

53-55, 147). She was placed in a non-emergency position until she could complete the state mandated training she missed. The City assisted Officer Aquino in making up the necessary training. (COCSJ53-55). She was then returned to the same position she held prior to being cited for termination- police officer- but as a liaison officer at the Charlotte Government Center to minimize the chances of her needing to make arrests since she cannot testify in court. (COCSJ 105-106)

12. Consistent with CMPD policy, Officer Aquino was not paid while she was out of work (COCSJ 116); however, when she returned to work, she received all market adjustments she had missed as well as any other adjustments made to the public safety pay plan. (COCSJ 107-108, 64-67)

13. Consistent with CMPD Directive 200-001: Discipline, Internal Investigations and Employee Rights and CMPD Directive 300-011 Promotional Procedures, Officer Aquino was not eligible to be promoted while she was out of work or for a period after she returned. (COCSJ 109-110, 116-117, 184-190). However, once that time expired, she was allowed to participate and is currently on a promotion list where she ranks 62 out of 103. (COCSJ 117, 150). She also resumed receipt of all retirement benefits and vacation upon her return (COCSJ 117). Finally, she received her uniform and equipment within hours of alerting CMPD that she had completed her training and was ready to return to full duty. (COCSJ 98)

14. From 2011-2023, the City received a total of five *Giglio* disqualification letters from the Mecklenburg County District Attorney's Office, one of which was for Officer Aquino. (COCSJ 68-76). All five of the officers were cited for termination since they could no longer perform one of the essential functions of their jobs. (COCSJ 88, 117). All except for Officer Aquino resigned once they were cited for termination. (COCSJ 117)

# ARGUMENT

## A. Procedural Due Process Claim (Property Interest in Continued Employment, Liberty Interest in Pursuing Common Calling, Liberty Interest in Remaining Free of Government Stigma)

Plaintiff claims the City deprived her of her property interest in continued employment, her liberty interest in pursuing a common calling, and her liberty interest in remaining free from government stigma/badge of infamy that forecloses future employment opportunities.

### Continued Employment

The City has not deprived Officer Aquino of continued employment because she remains employed in the same position she held before she was cited for termination.

### Common Calling

The liberty interests protected by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." *Roth,* 408 U.S. at 572, 92 S.Ct. 2701. This right, however, is not so broad as to protect an individual's right to a particular job. Instead, "[i]t is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1259–1260 (3d Cir.1994) (internal citation and quotation marks omitted); *see Ulichny v. Merton Cmty. Sch. Dist.,* 249 F.3d 686, 704 (7th Cir.2001) ("The due process clause of the Fourteenth Amendment secures the liberty to pursue a calling or occupation, and not the right to a specific job."). As the Supreme Court emphasized in *Roth,* "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. 2701.

This claim should fail because Plaintiff remains employed with the City in the same position she held prior to being cited for termination. In addition, when questioned under oath

about other police jobs she had applied for since receipt of the Giglio Letter, she testified that she applied for one federal policing job but did not get an interview. Other than that single job opportunity, she could not remember any other police jobs for which she had applied. (COCSJ 149). Thus, Plaintiff has failed to come forward with concrete evidence that she is completely unable to practice a calling. See *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999)

### Freedom of Government Stigma

To state a "stigma plus" claim under the Due Process clause, plaintiff must show that charges against him placed a stigma on his reputation, were made public by the employer, were made in conjunction with his termination or demotion and were false. *Sciolino v. City of Newport News*, 482 F.3d 642, 646 (4th Cir. 2007). The City did not make its receipt of the Giglio Letter public. A copy of the Giglio Letter was placed in Plaintiff's personnel file as the City is required to do under N.C.G.S. §160A-168, and the North Carolina Department of Justice Criminal Justice Standards Division was notified about the letter as the City is required to do pursuant to NG.G.S. § 17C-16. (COCSJ 63). Other than required disclosures, the Giglio Letter was maintained in a confidential manner consistent with CMPD Directive 300-008: Personnel Records (COCSJ 181-183). Finally, the charges against Officer Aquino were not false. The City did in fact receive a Giglio letter which prohibits Officer Aquino from completing one of the 22 essential functions of her job.

### B. Substantive Due Process Claim

In order to prevail on her substantive due process claim, Plaintiff must demonstrate: "(1) that [she] had property or a property interest; (2) that the state deprived [her] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Tri Cnty. Paving, Inc. v. Ashe*

*Cnty.*, 281 F.3d 430, 440 (4th Cir. 2002) (citing *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995). Substantive due process protections "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County,* 946 F.2d 278, 281 (4th. Cir.1991).

Plaintiff cannot point to a single case or authority to support that the City had any obligation to independently investigate or attempt to overrule the District Attorney's judgment as reflected in the Giglio Letter. As CMPD's Former Chief of Police Kerr Putney explained, the decision to issue a Giglio letter is entirely up to the District Attorney. (COCSJ 133). The District Attorney's office sets the criteria and do not consult with CMPD prior to issuing a Giglio letter. (*Id.*).

Further, though not required, CMPD gave Plaintiff numerous opportunities to be heard. She was given an opportunity to be heard before she was found to have lied about her location on four occasions. Afterwards, she was given a chance to appeal those findings- which she did not take. She was given an opportunity to be heard when she was cited for termination due to receipt of the Giglio Letter- by both D.A. Merriweather and the City. She did not initially take advantage of that option when given it by the City but she later provided a written statement and then appealed the ruling to the Deputy Chief. Finally, she was heard by the Civil Service Board.

Finally, even assuming Officer Aquino had a property interest and that the City deprived her of it, this claim fails under the third prong of the *Sylvia* test. The City's actions clearly did not fall beyond the outer limits of legitimate governmental action. In fact, quite the opposite is true. The City's actions were rationally related to a legitimate governmental purpose: ensuring its

officers could perform the essential functions of their jobs. Therefore, Plaintiff cannot demonstrate that the City's actions were arbitrary or irrational as required by *Sylvia* and *Rucker.*

**C. First Amendment**

In order to establish a violation of the First Amendment, a public employee must satisfy the following three elements: First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern. Second, the employee's interest in the expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action. *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 316 (4th Cir.2006) (internal citations and quotation marks omitted).

Summary judgment is warranted because there was no retaliatory employment action taken against Officer Aquino. It is undisputed that Officer Aquino was cited for termination due to the District Attorney's decision that she could no longer testify in court, an essential function of her job as a police officer. Plaintiff even acknowledges she was cited for termination due to her receipt of the Giglio letter in her Complaint.

This claim also fails because she spoke as an employee on a private matter. When an employee's speech pertains to a matter of personal interest, the First Amendment offers no protection. *Stroman v. Colleton Cnty. Sch. Dist.,* 981 F.2d 152, 156 (4th Cir.1992). As the Fourth Circuit explained in *Stroman,* "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Id.* (citing *Connick,* 461 U.S. at 147, 103 S.Ct. 1684).

### D. Breach of Contract

Plaintiff alleges that certain City employees assured her that her job was secure after the slander verdict was entered against her. However, these statements are hearsay and Plaintiff chose not to depose a single one of the individuals she claims assured her of the security of her job. To the contrary, 30(b)(6) witness Pippen testified that "no one could say your job is safe. We [The City] don't do—that wouldn't—that's not normal operations." (COCSJ113). Further, Plaintiff remains employed with CMPD in the same position she held prior to her suspension (police officer). Accordingly, no breach of contract would have occurred if such contract existed.

### E. Equal Protection Pursuant to Fourteenth Amendment

The City is entitled to summary judgment on Plaintiff's Equal Protection claim because the undisputed evidence before the Court illustrates that there was no difference in treatment from others with whom she is similarly situated.

To successfully prove an equal protection claim, a plaintiff must put forth evidence that she has been treated differently from others with whom she is similarly situated, the unequal treatment was the result of intentional or purposeful discrimination and the disparity was not justified under the appropriate level of scrutiny. *Fauconoer v. Clark*, 966 F.3d 265, 277 (4th Cir. 2020). Because Plaintiff alleges a class of one equal protection claim, rational basis is the appropriate level of scrutiny. *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005).

This claim should fail because the evidence illustrates that Plaintiff has not been treated differently from another similarly situated individual. In her Complaint, Plaintiff discusses a single CMPD employee who she believes received more favorable treatment than she did. This speculation is not sufficient to support this claim. *Giles v. Hindsman*, 2022 WL 1957762 at *1 (W.D.N.C.. June 6, 2022). Plaintiff has not come forward with any evidence to support this

allegation or to show that this employee received a Giglio disqualification letter like Officer Aquino did. To the contrary, the only evidence before this Court is that every officer who has received a *Giglio* disqualification letter since 2011 has been cited for termination since they could no longer perform one of the essential functions of their job. (COCSJ 88, 117).

As for Plaintiff's claims that she has been treated less favorably in terms of her uniforms and benefits, the actual evidence before the Court illustrates that Plaintiff has been treated just like everyone else and consistent with CMPD policy. She was paid like every other employee who is suspended and returns to work. (COCSJ 116, 107-108, 64-67). She was taken off promotion lists and then allowed to participate again in the same manner and in the same time period as every other employee who is suspended and returns to work. (COCSJ 109-110, 116-117, 150, 184-190). The same can be said of her treatment with regards to retirement benefits and vacation (COCSJ 117). Finally, she received her uniform and equipment within hours of alerting CMPD that she had completed her training and was ready to return to full duty consistent with CMPD policy. (COCSJ 98)

Further, there is no evidence whatsoever that the City's actions were the result of intentional or purposeful discrimination. In fact, the CSB specifically found that Officer Aquino violated Rule of Conduct 5A due to her receipt of the Giglio Letter which prevented her from performing an essential function of her job. (COCSJ 56-62)

**F. State Law Claims**

    **Article 1 § 19 of North Carolina Constitution (Law of the Land)**

The North Carolina Supreme Court has interpreted this provision as synonymous with due process of law as used in the Fourteenth Amendment of the U.S. Constitution. Because Plaintiff's Due Process claim fails, Plaintiff's claim under Article 1 §19 of the North Carolina Constitution

likewise fails. *Bacon v. Lee*, 549 S.E.2d 840, 856 (N.C. 2001) (citing *In re Moore*, 221 S.E.2d 307, 309 (N.C. 1976).

**Article 1 § 18 of the North Carolina Constitution (Right to Redress Injury to Reputation)**

As this Court explained in its June 5, 2023 Order (Doc. 49), this open courts provision is a remedy clause rather than a standalone claim. Because Plaintiff has failed to come forward with evidence of a legally cognizable injury attributable to the City, this claim should be dismissed. *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 853 S.E.2d 698 (2021)

**Equal Protection Pursuant to Article 1 §19 of the North Carolina Constitution**

The guarantee of Equal Protection provided in the Fourteenth Amendment is the same as that found in Article I, §19 of the North Carolina Constitution. *Richardson v. N. Carolina Dep't of Correction*, 478 S.E.2d 501, 505 (N.C. 1996). Accordingly, the above analysis illustrates why this claim should be dismissed.

**Article 1 §1 of the North Carolina Constitution (Fruits of Labor)**

While Article 1 §1 of the North Carolina Constitution has primarily been applied in cases involving the state's licensing power, even if were to apply in the instant case, the claim should fail because there is no evidence that the City violated its own rules or policies in how it treated Officer Aquino. She has not come forward with any allegation or evidence similar to that of Sergeant Mole in *Mole' v. City of Durham*, 2021-NCCOA-527, ¶ 27, 279 N.C. App. 583, 591, 866 S.E.2d 773, 780, *aff'd, ordered not precedential*, 384 N.C. 78, 884 S.E.2d 711 (2023) where he claimed he was given improper and inadequate notice of his pre-disciplinary hearing in violation of Durham's own employment disciplinary procedures.

At most, Plaintiff criticizes the thoroughness with which the City investigated once it received the Giglio Letter. However, as CMPD's Deputy Chief Jacquelyn Hulsey explained, it "is

a determination made by the district attorney. We're not involved in their decision making, nor are we afforded an opportunity to come back and speak on behalf of our employee to try to change or alter that decision." (COCSJ80). Mr. Merriweather "has the legal authority to make that judgment call in the best interest of the citizens of Mecklenburg County." (COCSJ 81). Thus, once the Giglio letter was received, there was very little left for the City to do. In fact, Plaintiff acknowledges in her Complaint that testifying in court is an essential function of a patrol officer's job. This letter foreclosed her ability to do that essential function.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that its Motion for Summary Judgment be granted.

This 1st day of <u>April</u>, 2024.

/s/ Lori R. Keeton
Lori Keeton, N.C. Bar No. 25813
The Law Offices of Lori Keeton
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Telephone: (704) 552-3614
Facsimile: (704) 919-5059
lkeeton@lorikeetonlaw.com
*Attorney for City of Charlotte*

## CERTFICATE OF COMPLIANCE

    The undersigned counsel hereby affirms that the foregoing supporting Memorandum of Law is under 4, 500 words as required by the Honorable Frank D. Whitney's Standing Governing Civil Case Management

    **THIS** <u>1st</u> day of April, 2024.

<u>/s/ Lori R. Keeton</u>
Lori R. Keeton, N.C. State Bar # 25813
Law Offices of Lori Keeton
*Attorney for City of Charlotte*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was served on all attorneys of record using the Court's CM/ECF system which will send notification of such filing to any CM/ECF participants.

This 1st day of April, 2024.

/s/ Lori R. Keeton
Lori Keeton, N.C. Bar No. 25813
The Law Offices of Lori Keeton
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Telephone: (704) 552-3614
Facsimile: (704) 919-5059
lkeeton@lorikeetonlaw.com
*Attorney for City of Charlotte*