UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-00618-FDW-SCR

| AIMEE IRENE AQUINO, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
| CITY OF CHARLOTTE, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Plaintiff's Motion to Alter Judgment, (Doc. No. 65), and Defendant's Motion for Summary Judgment, (Doc. No. 71). These motions have been fully briefed and are ripe for ruling. For the reasons that follow, Plaintiff's Motion is DENIED, and Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

**I. Motion to Alter Judgment**

On January 26, 2024, the Magistrate Judge in this case ruled on two motions made pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and issued protective orders prohibiting Plaintiff from taking depositions and obtaining certain documents and information sought from non-parties in this matter. The Magistrate Judge issued the order pursuant to congressional authority and the referral designation contained in this Court's standing orders. See 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . ."); IN RE: HONORABLE FRANK D. WHITNEY, PRESIDING JUDGE REFERRALS TO MAGISTRATE JUDGES, 3:06-mc-83 ("[P]ursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1, in civil and miscellaneous cases assigned to the Honorable Frank D. Whitney, the Magistrate Judge shall be specifically referred the following duties: 1) To dispose

1

of any civil pretrial motions pertaining to discovery arising under Rules 26, 27, 34, 35, 36 and 37 of the Federal Rules of Civil Procedure . . . .").

Twenty-eight days later—on February 23, 2024—Plaintiff filed the instant Motion to Amend or Alter pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. As an initial matter, Plaintiff's motion is denied as untimely because she did not comply with Rule 72(a), which only allows fourteen (14) days for a party to file objections to orders entered by magistrate judges on nondispositive matters. Plaintiff missed this deadline and provides no explanation for doing so. Plaintiff's Motion is DENIED as untimely, and in any event, the Court concludes the Magistrate Judge's order is neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). '

Plaintiff argues the Magistrate Judge's orders should be considered "dispositive" and subject to the twenty-eight day deadline under Fed. R. Civ. P. 59(e). Although Plaintiff is incorrect in her characterization of these orders as dispositive, even if she was correct, her reliance on Rule 59(e) is misplaced, as the rule specifically contemplates altering or amending a "judgment," which does not yet exist in this matter. And again, even presuming Rule 59(e) was available to Plaintiff at this stage, her motion still fails.

"Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." U.S. ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210–11 (4th Cir. 2017) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). With respect to the third factor, there must be more than simply a "mere disagreement" with a decision to support a Rule 59(e) motion. Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th

2

Cir. 1993). In the instant Motion, Plaintiff fails to recognize the Rule 59(e) standard or make an argument under the three situations set forth above. Although Plaintiff disagrees with the court's decision to grant the protective orders, the Court concludes Plaintiff has not established that the decision constituted "a clear error of law" or resulted in "manifest injustice" that requires correction.

Finally, Plaintiff's effort in her reply brief to seek relief *for the first time* under Rule 54(b) of the Federal Rules of Civil Procedure violates Local Civil Rule 7.1(c)(2), which prohibits parties from filing motions in responsive briefs and instead requires a separately filed pleading. Plaintiff did not file a separate motion, and the Court declines to convert the motion and apply a different legal standard than set forth above.

Plaintiff's Motion to Alter Judgment is DENIED.

## II. Motion for Summary Judgment

A. Background

It is well-settled that for purposes of summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden has been met, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial and may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Celotex, 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to

be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."); see also Perez v. Arnold Transportation, No. 3:15-CV-3162-TLW, 2018 WL 2301850, at *3 (D.S.C. Feb. 12, 2018) ("As the nonmoving party, . . . Plaintiffs may not rest on mere allegations or denials; they must produce 'significant probative evidence tending to support the complaint.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Here, Defendant provided a summary of facts supported by evidence in the record, while Plaintiff's "Statement of the Facts" simply "incorporates the facts outlined in her Amended Complaint as if fully set forth herein." (Doc. No. 76, p. 2.) Since this is inappropriate at summary judgment, the Court instead looks to Plaintiff's citation to record evidence in the argument portion of her brief in opposition to the instant motion. After reviewing the parties' evidence and construing all inferences in Plaintiff's favor, the Court provides the following background as a summary.

Plaintiff is a police officer who works for the Charlotte Mecklenburg Police Department ("CMPD"). Defendant hired Plaintiff to work as a CMPD patrol officer in 2009, and she began her job in May 2010. One of the "essential job functions" a CMPD officer must be able to perform is the ability to "provide sworn testimony in court." (Doc. No. 13-2, p. 2.)

In August 2013, an investigation by CMPD Internal Affairs found Plaintiff to have been untruthful about her location while on duty on four separate occasions. Plaintiff did not appeal this ruling. On March 14, 2016, a jury rendered a verdict against Plaintiff for slander. Plaintiff was represented by counsel, testified, and had the opportunity to present evidence. Because Plaintiff made the slanderous statement at work, Defendant provided outside counsel for Plaintiff and ultimately paid $41,500 to settle the claim after the jury rendered a $50,000 verdict against her. Plaintiff did not appeal the verdict.

4

On November 15, 2018, Mecklenburg County District Attorney Spencer B. Merriweather III issued a letter (the "Giglio Letter")[1] to the Chief of CMPD stating that the District Attorney's office would no longer be able to call Plaintiff as a police witness for the State of North Carolina in *any* criminal or traffic case because she had two separate findings of untruthfulness—one from 2013 for falsely recording her location and the second being the 2016 slander verdict. Based upon these two violations, Mr. Merriweather said it would be "insurmountable" to rehabilitate Plaintiff's credibility in front of a judge or jury. (Doc. No. 72, pp. 16-17.) Mr. Merriweather provided a copy of the Giglio Letter to Plaintiff, and CMPD placed a copy of the Giglio Letter in Plaintiff's personnel file.

On April 10, 2019, the CMPD Independent Chain of Command Review Board considered the Giglio Letter; determined Plaintiff violated CMPD Rule of Conduct 5A: Unsatisfactory Performance and could no longer perform her job-related duties; suspended her without pay; and cited her to the Civil Service Board for termination. Plaintiff appealed the decision with the Deputy Chief, but the decision remained the same. On July 28-29, 2021, the Civil Service Board conducted a hearing, where Plaintiff appeared along with counsel to represent her, testified, and had the opportunity to present evidence. On September 10, 2021, the Civil Service Board issued a decision sustaining the allegation that Plaintiff violated CMPD Rule of Conduct 5A: Unsatisfactory Performance, overturned the corrective action of termination, suspended Plaintiff for ninety days, and reinstated Plaintiff's employment. The Civil Service Board did not award Plaintiff back pay.

---

[1] Pursuant to Supreme Court precedent in Giglio v. United States, due process requires the prosecution turn over evidence favorable to the accused and material to his guilt or punishment, which includes evidence that may be used to impeach the prosecution's witnesses, including police officers. 405 U.S. 150 (1972) (holding that a prosecutor must disclose any evidence impacting a witness's credibility when that witness's testimony can be determinative of guilt or innocence).

Plaintiff returned to work in a non-emergency position until she could complete certain required training. Once she completed the training, CMPD returned Plaintiff as a police officer, which was the same position she held prior to being cited for termination, and CMPD assigned her as a liaison officer at the Charlotte Government Center.

CMPD did not pay Plaintiff while she was out of work; however, Plaintiff received all salary adjustments she had missed once she returned to work. Pursuant to CMPD Directive 200-001: Discipline, Internal Investigations and Employee Rights and CMPD Directive 300-011 Promotional Procedures, Plaintiff was ineligible to be promoted while she was out of work or for a period after she returned; and once that time expired, Plaintiff was allowed to participate in considerations for promotions and is currently on a promotion list. Plaintiff also resumed receipt of all retirement benefits and vacation upon her return.

Plaintiff filed the instant action on November 12, 2021, and asserts claims against Defendant arising out of its actions related to the Giglio Letter.

B. Analysis

Summary judgment is appropriate if the record demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A fact is material only if it might affect the outcome of the suit under governing law. Id. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). As explained above, the party seeking summary judgment bears the initial burden of demonstrating there is no genuine issue of material fact. Celotex Corp., 477 U.S. at 323.

In order to survive summary judgment once the movant satisfies this threshold demonstration, the non-moving party may not rest on the allegations in her pleadings and must demonstrate specific, material facts exist that give rise to a genuine issue. Id. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion; and conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Anderson, 477 U.S. at 248, 256.

As an initial matter, Plaintiff asserts summary judgment is not appropriate because Plaintiff "has not had a full and fair opportunity to develop her case through discovery and still awaits the Court's ruling on her Motion to Reconsider . . . ." (Doc. No. 76, p. 2.) In light of the Court's ruling above denying the relief sought in the motion to reconsider, this argument has no merit. Furthermore, discovery in this case has closed, and Defendant has timely moved for summary judgment pursuant to the Federal Rules of Civil Procedure and the deadlines set in the Case Management Order as modified by the magistrate judge assigned to this case.

Defendant seeks summary judgment on Plaintiff's procedural due process claims, substantive due process claims, First Amendment claim, breach of contract claim, Equal Protection claim pursuant to the Fourteenth Amendment, and Plaintiff's state law claims arising out the North Carolina constitution.

1. Abandoned Claims

In its reply brief, Defendant argues Plaintiff has abandoned her claims for breach of contract and First Amendment violations because she has not provided any argument or response to refute Defendant's arguments for summary judgment on those claims. The Court agrees and concludes Plaintiff has abandoned these claims. See Ferdinand–Davenport v. Children's Guild, 742 F.Supp.2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in

a motion to dismiss, "the plaintiff abandons [her] claim."); Kinetic Concepts, Inc. v. Convatec Inc., 2010 WL 1667285 at *8 (M.D.N.C. 2010) (unpublished) (collecting cases).

Even if they were not abandoned, summary judgment is appropriate for Defendant on these claims. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (noting that the court cannot grant a motion for summary judgment merely because it is unopposed but rather must make an independent assessment whether the movant is "entitled to judgment as a matter of law"). Plaintiff fails to present *any* evidence tending to show a dispute of fact, and the record evidence before the Court—as well as the legal authorities cited by Defendant—demonstrate that insufficient evidence exists that would allow a reasonable jury to return a verdict on these claims for Plaintiff, and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment on Plaintiff's claims for breach of contract and violation of the First Amendment is granted.

Similarly, Plaintiff concedes she does not have evidence to support an Equal Protection claim because she cannot show Defendant treated Plaintiff differently from other officers who received Giglio Letters. (Doc. No. 76, p. 13.) To the extent Plaintiff requests to amend her complaint at this late stage of litigation, she has not made a proper motion before the Court. See Local Civil Rule 7.1(c)(2). Accordingly, summary judgment for Defendant on Plaintiff's Equal Protection claim is appropriate.

2. Procedural and Substantive Due Process Claims

Plaintiff asserts Defendant violated her rights to procedural due process by depriving her of her: 1) property interest in continued employment, 2) liberty interest in pursuing common calling, and 3) liberty interest in remaining free of government stigma. Plaintiff also asserts a

8

Case 3:21-cv-00618-FDW-SCR   Document 85   Filed 06/20/24   Page 8 of 15

substantive due process claim for Defendant's violation of her right to remain free from arbitrary and irrational government conduct.

To succeed on a due process claim, whether substantive or procedural, "a plaintiff must first show that [she] has a constitutionally protected liberty or property interest and [second] that he has been deprived of that protected interest by some form of state action." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988).

An at-will employee such as Plaintiff "has no protected property interest in his employment." Sciolino v. City of Newport News, Va., 480 F.3d 642, 645 (4th Cir. 2007); see also Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 578 (1972). Thus, Plaintiff's asserted property interest in continued employment fails. And even if it was a recognizable property interest, the undisputed evidence shows Plaintiff's employment was reinstated following the administrative review process, including consideration by her chain of command and the Civil Service Board, and she remains employed by Defendant. Summary judgment for Defendant is appropriate on this procedural due process claim.

Notwithstanding the lack of property interest in employment, "a public employer cannot deprive [an] employee of [her] freedom to take advantage of other employment opportunities." Sciolino, 480 F.3d AT 645. Such claim "arises from the combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty to engage in any of the common occupations of life and (2) the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Id. at 646. "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against [her]: (1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Id.

9

"The type of communication that gives rise to a protected liberty interest implies the existence of serious character defects such as dishonesty or immorality. In assessing liberty interest claims, we have distinguished statements that imply such serious character defects from statements that simply allege incompetence." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 308 (4th Cir. 2006) (cleaned up); see also Cannon v. Vill. of Bald Head Island, N. Carolina, 891 F.3d 489, 502 (4th Cir. 2018) ("[A] governmental disclosure places a stigma on a former employee sufficient to give rise to a liberty interest claim if it implies the existence of serious character defects such as dishonesty or immorality."). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

Here, recognizing Plaintiff's liberty interests in pursuing a common calling and remaining free of government stigma, no reasonable jury could find Defendant violated these interests. Plaintiff has not forecast any evidence to show an inability to pursue a common calling, particularly where the undisputed evidence shows she remains employed by Defendant and no evidence shows Plaintiff has been unable to practice her calling as a police officer or that she has been denied future employment opportunities because of *Defendant's* conduct. Her speculative and conclusory assertions that she will have no opportunity for employment advancement or reassignment and no opportunity to obtain alterative employment outside of her current role all fail for lack of any evidentiary support.

Additionally, Plaintiff has neither presented nor forecast evidence to show Defendant has placed a *false* stigma on her reputation. Plaintiff contends Defendant's placing of the Giglio Letter into her personnel file and publication of the Giglio Letter severely damaged her reputation and

career. No evidence before the Court, however, indicates the Giglio Letter's contents were false. Indeed, a jury found Plaintiff committed slander, which under North Carolina means the jury concluded a preponderance of evidence showed Plaintiff made "false, defamatory statements." Bouvier v. Porter, 900 S.E.2d 838, 846 (N.C. 2024) ("In order to recover for defamation, a plaintiff . . . must show that the defendant (1) caused injury to the plaintiff (2) by making false, defamatory statements (3) of or concerning the plaintiff (4) that were published to a third person. . . . [S]lander is an oral defamatory statement." (cleaned up)). Furthermore, Plaintiff presents no evidence to contradict the findings of untruthfulness in 2013. Finally, no evidence shows the District Attorney's discretionary decision explained in the Giglio Letter was not true. See Espinosa v. Lynch, No. CV1500324TUCCKJBGM, 2017 WL 1210736, at *4 (D. Ariz. Jan. 20, 2017) ("Plaintiff was not entitled to any due process protection prior to or surrounding the [prosecutor's] decision to issue a Giglio letter, as this decision was entirely within its discretion."), report and recommendation adopted, No. CV1500324TUCFRZBGM, 2017 WL 781460 (D. Ariz. Mar. 1, 2017), aff'd sub nom. Espinosa v. Whitaker, 747 F. App'x 598 (9th Cir. 2019); The District Attorney has the authority to decide who to call as a witness in a criminal prosecution, and no evidence shows his statement of that decision as contained in the Giglio Letter is false.

Plaintiff also argues Defendant violated her interests because she never received a hearing as to whether she was a credible witness, whether her testimony could be rehabilitated, or whether she could continue to provide testimony in court. These arguments are misplaced, as the District Attorney—not Defendant—made the decision that Plaintiff could no longer provide sworn testimony in court. Roe v. Lynch, 997 F.3d 80, 85 (1st Cir. 2021) (a police officer "cannot have a protected interest in something that government officials can grant or deny in their discretion. And discouraging broad disclosure is contrary to the Supreme Court's recognition that a prudent

11

prosecutor should err in favor of disclosure under Brady and Giglio." (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 763-64 (2005); Kyles v. Whitley, 514 U.S. 419, 439-40 (1995)).

Furthermore, Plaintiff has not presented any evidence to show a disputed fact as to Defendant's decision regarding Plaintiff's ability to perform her job duties as a result of the District Attorney's decision. Given the contents of the Giglio Letter and the District Attorney's decision that "the Mecklenburg County District Attorney's Office will no longer be able to call Officer Aquino as a police witness for the State of North Carolina in any criminal or traffic case," (Doc. No. 72, p. 16), no reasonable jury could find she "possess[ed] the ability to provide sworn testimony in court," which is listed as one of the "essential job functions of a law enforcement officer." (Doc. No. 13-2, p. 2.) Moreover, Plaintiff had notice of and an opportunity to be heard prior to the jury's verdict finding her liable for slander, and Plaintiff also had notice of and multiple opportunities to be heard in the administrative proceedings related to her termination, the subsequent change from termination to suspension, and the reinstatement of her employment. In sum, Defendant is entitled to summary judgment on Plaintiff's procedural due process claims.

Turning to Plaintiff's substantive due process claim, she contends Defendant engaged in arbitrary and irrational government conduct because the District Attorney's decision to issue the Giglio Letter was improperly motivated. Again, Plaintiff's argument misses the mark. The Fourth Circuit has explained:

> The touchstone of due process is protection of the individual against arbitrary action of government. Arbitrary action, however, is used in a constitutional sense, which encompasses only the most egregious official conduct, namely that which shocks the conscience. Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to conduct intended to injure in some way unjustifiable by any government interest.

12

Slaughter v. Mayor & City Council of Baltimore, 682 F.3d 317, 321 (4th Cir. 2012) (cleaned up); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); see also Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 440 (4th Cir. 2002) ("Substantive due process protections 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" (quoting Rucker v. Harford County, 946 F.2d 278, 281 (4th. Cir. 1991)).

In support of this claim, Plaintiff contends the District Attorney's "motivation to issue the Giglio letter in this case was likely improper, and that the reasons stated in the Giglio Letter are pretextual." (Doc. No. 76, p. 10.) This argument and Plaintiff's undeveloped and speculative forecast of evidence to support it are irrelevant to state a substantive due process claim against *Defendant*, which played no role in issuing the Giglio Letter. Additionally, Defendant's placement of the Giglio Letter in Plaintiff's personnel file fails to demonstrate a substantive due process claim. And, as explained above, Plaintiff had numerous opportunities to be heard, including in 2013 in regard to the findings of untruthfulness in her location disclosures, in 2016 in the jury trial finding her liable for slander, in 2019 when Plaintiff challenged the chain of command decision regarding the Giglio Letter, and in 2021 when Plaintiff appeared before the Civil Service Board. Plaintiff has failed to present any evidence to demonstrate Defendant acted arbitrary, unjustifiably, or irrational in its decisions regarding Plaintiff's employment. Under this record, no genuine dispute of material fact exists as to whether Defendant's actions were rationally related to a legitimate governmental purpose, and Defendant is entitled to summary judgment on Plaintiff's substantive due process claim.

    3.    State Law Claims under the North Carolina Constitution

Plaintiff's remaining state-law claims could be heard by this Court through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state-law claims along with federal claims. Federal courts are permitted to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction," then the court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise supplemental jurisdiction, courts look at "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." Henderson v. Harmon, No. 22-6029, 2024 WL 2195579, at *6 (4th Cir. May 16, 2024) (internal quotation marks omitted) (affirming district court's granting of summary judgment to defendants on the only remaining federal claim and declining to exercise supplemental jurisdiction and dismissing the state-law claim without prejudice).

Here, dismissal of the state-law claims is appropriate in light of applicable law. The remaining claims present state-law questions and specifically call into question issues of North Carolina Constitutional law. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in this case and dismisses them without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Alter Judgment, (Doc. No. 65), is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Summary Judgment, (Doc. No. 71), is GRANTED IN PART as to Plaintiff's claims under federal law and DENIED IN PART as to Plaintiff's claims under state law, which are instead DISMISSED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that the Clerk of Court is respectfully directed to CLOSE THE CASE.

**IT IS SO ORDERED.**

Signed: June 20, 2024

Frank D. Whitney
United States District Judge